**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **SHERITA SIMON,** | CASE NO.: |
| Plaintiff, | |
| | JUDGE |
| v. | |
| **BEACHWOOD CITY SCHOOL DISTRICT BOARD OF EDUCATION,** | |
| **ROBERT P. HARDIS** Superintendent of Beachwood City School) District (Individual and Official Capacity), | **COMPLAINT** *(Demand for Jury Trial)* |
| **KEN VEON** Assistant Superintendent of Beachwood City School) District (Individual and Official Capacity), | |
| **INDIA JACKSON** Director of Human Resources Beachwood City School District (Individual and Official Capacity), | |
| Defendants. | |

## I. INTRODUCTION

1. This is an action for disability discrimination, race discrimination, and unlawful retaliation brought by Plaintiff Sherita Simon against her public employer and its officials arising out of the denial of a reasonable workplace accommodation, an involuntary reassignment and de facto demotion, and a pattern of adverse treatment that followed her protected requests and complaints.

2. Ms. Simon is a Building Secretary who, at all relevant times, performed her duties at a distinguished level. She was diagnosed with post-traumatic stress disorder (PTSD) and, in May 2025, formally requested a reasonable accommodation under the Americans with

Disabilities Act: a private, enclosed workspace in which she could perform her essential job functions safely.

3. Rather than provide the requested accommodation or engage in a good-faith interactive process to identify one, the District reassigned Ms. Simon from Secretary to the Principal at Hilltop Elementary School to a position at Beachwood High School that placed her in an open, high-traffic area her clinician and union identified as unsuitable, stripped her of her title, and assigned her duties consistent with a lower-classified office-assistant role.

4. At the same time, the District extended favorable treatment to comparable non-disabled and non-Black employees, including by preserving their preferences and creating or filling positions for them, while Ms. Simon and another Black employee were afforded no meaningful choice.

5. Ms. Simon brings claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and, by supplemental jurisdiction, the Ohio Civil Rights Act, Ohio Rev. Code Chapter 4112.

## II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights), and over her related state-law claims under 28 U.S.C. § 1367 (supplemental jurisdiction), because those claims form part of the same case or controversy.

7. This action is authorized by 42 U.S.C. § 2000e-5(f) (Title VII), 42 U.S.C. § 12117 and § 12203 (ADA), and 42 U.S.C. § 1983 as to the reserved constitutional counts.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants reside in this District and because the unlawful employment practices alleged were committed within this District, in Cuyahoga County, Ohio.

9. Assignment to the Eastern Division is proper because the events giving rise to this action occurred in Cuyahoga County.

### III.  PARTIES

10. Plaintiff Sherita Simon is a citizen of the United States and a resident of Ohio. At all relevant times she was employed by the Beachwood City School District as a Building Secretary (classified staff) and is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111(8), an "employee" within the meaning of Title VII and the ADA, and a member of a protected class (Black/African American).

11. Defendant Beachwood City School District Board of Education (the "District") is a political subdivision and public school district organized under the laws of the State of Ohio, with its principal offices at 24601 Fairmount Boulevard, Beachwood, Ohio 44122. The District is an "employer" within the meaning of Title VII (42 U.S.C. § 2000e(b)), the ADA (42 U.S.C. § 12111(5)), and Ohio Rev. Code § 4112.01, employing well in excess of the statutory threshold of employees, and is a "person" acting under color of state law for purposes of 42 U.S.C. § 1983.

12. Defendant Robert P. Hardis is, and at all relevant times was, the Superintendent of the District. He is sued in his individual capacity on the reserved Section 1983 counts for conduct undertaken under color of state law.

13. Defendant Ken Veon is, and at all relevant times was, the Assistant Superintendent of the District with responsibility over human resources. He is sued in his individual capacity on the reserved Section 1983 counts for conduct undertaken under color of state law.

14. Defendant India Jackson is, and at all relevant times was, the Director of Human Resources for the District and its designated Compliance Coordinator. She is sued in her individual capacity on the reserved Section 1983 counts for conduct undertaken under color of state law.

15. At all relevant times, the individual Defendants acted within the scope of their employment and under color of the statutes, ordinances, regulations, customs, and usages of the State of Ohio and the District.

## IV.  ADMINISTRATIVE EXHAUSTION

16. Ms. Simon timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 22A-2025-03375, alleging disability discrimination, race discrimination, and retaliation.

17. The EEOC issued a Notice of Right to Sue dated May 20, 2026. This Complaint is filed within ninety (90) days of Ms. Simon's receipt of that Notice and is therefore timely.

18. Ms. Simon has satisfied all conditions precedent to the institution of this action. Her Ohio Rev. Code Chapter 4112 claims require no administrative exhaustion and are timely brought within the applicable limitations period.

## V.  FACTUAL ALLEGATIONS

### A.  Ms. Simon's Employment and Disability

19. Ms. Simon has been employed by the District since approximately January 2023. She served as a Building Secretary and Secretary to the Principal at Hilltop Elementary School, where she worked in a private, enclosed office.

20. Ms. Simon performed her job well. Her 2024–2025 performance evaluation rated her at a "Distinguished" level in multiple facets of her work, including maintaining the confidentiality of sensitive information and competency in district software such as Infinite Campus. She had no record of discipline from her direct supervisor.

21. Ms. Simon has been diagnosed with post-traumatic stress disorder (PTSD), a mental impairment that substantially limits one or more major life activities, including but not limited to concentrating, thinking, interacting with others, and sleeping. She is a qualified individual with a disability who can perform the essential functions of her position with a reasonable accommodation.

22. A private, enclosed workspace, limiting her exposure to large open areas and crowds, enables Ms. Simon to perform her essential job functions. Her treating clinician has supported this accommodation.

### B.  Ms. Simon Requests a Reasonable Accommodation

23. On or about May 2, 2025, Ms. Simon submitted a written request for reasonable accommodation under the ADA to Defendant India Jackson, Director of Human Resources, attaching supporting documentation from her healthcare provider describing her condition and recommended accommodations. This was the first of several submissions and constituted notice to the District of her disability and need for accommodation no later than May 2025.

24. On or about May 8, 2025, Ms. Jackson, in consultation with Defendant Ken Veon, acknowledged the request and directed Ms. Simon to have additional forms completed by her provider before the District would proceed with its review.

25. Ms. Simon complied. She submitted the requested provider documentation and, on or about June 17–20, 2025, provided further documentation from her treating clinician in support of the accommodation.

26. The District convened interactive meetings on or about April 16, 2025 and June 3, 2025. In those meetings and related correspondence, Ms. Simon and her union representative made clear that, while telecommuting was not required and was withdrawn from consideration, a private workspace remained essential so that Ms. Simon could feel safe and perform her duties.

### C.  The District Reassigns Ms. Simon in Lieu of Accommodating Her

27. Rather than provide a private, enclosed workspace, the District determined to reassign Ms. Simon from Secretary to the Principal at Hilltop Elementary School to a secretary position at Beachwood High School, effective the beginning of the 2025–2026 school year. Ms. Simon was notified of the reassignment during in-person meetings on or about April 16, 2025 and June 3, 2025.

28. The Beachwood High School placement located Ms. Simon in an open, high-traffic area near the building entrance, described by her union as a "fish bowl," exposing her to precisely the large open spaces and crowds her disability requires her to avoid. The District's alternative offer of a partition did not provide a private or enclosed workspace and was not an effective accommodation.

29. On or about June 9, 2025, the District's Human Resources office issued a letter characterizing the interactive process. Ms. Simon's union representative promptly disputed the letter's accuracy, reaffirming in writing that the private-workspace accommodation was still needed and had never been withdrawn.

30. On or about June 23, 2025, Ms. Simon confirmed in writing that her requested accommodation had been "neither provided nor withdrawn," and asked the District to state clearly whether it would accommodate her. The District did not provide the accommodation.

### D. The Reassignment Operated as a Demotion

31. Although the District represented that the reassignment was neither a demotion nor a reduction in pay, the duties assigned to Ms. Simon at Beachwood High School, including all-day attendance and admitting individuals into the building, are duties associated with a lower-classified office-assistant position, not the Secretary to the Principal role for which she was classified and paid.

32. On the District's 2025–2026 staff directory, Ms. Simon's title was listed as "Attendance / Front Desk Secretary" rather than "Secretary to the Principal," despite written assurances from Ms. Jackson (on or about April 17, 2025) and Superintendent Hardis (on or about August 14, 2025) that her title would remain Secretary to the Principal. Ms. Simon raised this discrepancy in writing on or about October 9, 2025.

33. The change in duties and title constituted a materially adverse change in the terms and conditions of Ms. Simon's employment.

### E. Comparators and Disparate Treatment

34. The District treated comparable employees outside Ms. Simon's protected classes more favorably. Upon information and belief, a non-Black employee (Rebecca Fleischmann) who

had performed the attendance and admitting duties was reassigned in a manner consistent with institutional preference, and another non-Black employee (Vicki Lefelhocz) was placed in a secretary-to-counselor position that, upon information and belief, was never posted as required.

35. By contrast, Ms. Simon and another Black employee were afforded no meaningful choice in their assignments. The disparity in treatment supports an inference that race was a motivating factor in the District's decisions.

### F.  Protected Activity and Retaliation

36. Ms. Simon engaged in activity protected by the ADA and Title VII, including requesting reasonable accommodation on multiple occasions between May and August 2025, pursuing the interactive process through her union, appealing the District's handling of her accommodation, and complaining of discriminatory and disparate treatment.

37. Following and because of that protected activity, the District took materially adverse actions against Ms. Simon, including reassigning her to an unsuitable placement, assigning her lower-classified duties, and downgrading her title, all of which would dissuade a reasonable employee from engaging in protected activity.

38. As a direct and proximate result of the District's conduct, Ms. Simon's PTSD symptoms worsened and she was compelled to take medical leave. She remains out of the workplace as a consequence of the District's actions.

### G.  Property Interest, Board Action, and Discipline During Leave

39. As a non-teaching, classified employee who had completed her probationary period, Ms. Simon had a legitimate claim of entitlement to, and a constitutionally protected property interest in, her continued employment under Ohio Rev. Code § 3319.081 and the operative

collective bargaining agreement, terminable only for cause and after notice and an opportunity to be heard.

40. While Ms. Simon was out on medical leave necessitated by the District's failure to accommodate her disability, the District, upon information and belief, moved to fill and permanently replace her position, as reflected in a posted action of the Board of Education.

41. The District did not, before effectively removing Ms. Simon from her position, provide her with notice of any charges or asserted grounds and a meaningful opportunity to respond.

42. Separately, while Ms. Simon was on protected medical leave, the District subjected her to additional disciplinary action based on alleged off-duty social-media activity. Upon information and belief, the post at issue did not identify the District, any District employee, or any District matter, and did not disrupt District operations.

43. The District's decision to discipline Ms. Simon for protected off-duty expression, during her medical leave and following her protected complaints and accommodation requests, further evidences the District's retaliatory motive.

### H.  Preservation of Evidence

44. Ms. Simon possesses and has preserved evidence corroborating the foregoing, including contemporaneous written communications with District officials and her union and an audio recording of the meeting at which District officials communicated the reassignment decision and its stated reasons.

## VI. CAUSES OF ACTION

### COUNT I
### Failure to Provide Reasonable Accommodation
### ADA, 42 U.S.C. § 12112(b)(5)(A)
### (Against the District)

45. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

46. Ms. Simon is a qualified individual with a disability who, with a reasonable accommodation, can perform the essential functions of her position.

47. The District had notice of Ms. Simon's disability and her need for accommodation no later than May 2025.

48. A private, enclosed workspace was a reasonable accommodation that would not have imposed an undue hardship on the District, as evidenced by the District's provision of comparable private space to at least one other employee.

49. The District failed to provide the requested accommodation or any effective alternative, offering only a partition and an open placement that did not meet Ms. Simon's documented needs.

50. As a direct and proximate result, Ms. Simon has suffered and continues to suffer economic and non-economic harm, including lost wages and benefits, worsening of her medical condition, emotional distress, and other damages.

## COUNT II
### Failure to Engage in the Interactive Process
### ADA, 42 U.S.C. § 12112(b)(5)(A)
### (Against the District)

51. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

52. Once Ms. Simon requested accommodation, the ADA obligated the District to engage in a good-faith, interactive process to identify a reasonable accommodation.

53. The District failed to engage in that process in good faith. It mischaracterized the parties' discussions, treated a reassignment it had already decided upon as the interactive outcome, and declined to identify or implement an available private workspace despite Ms. Simon's and her union's repeated clarifications.

54. The District's failure to engage in good faith caused the breakdown of the interactive process and the denial of a reasonable accommodation that was available, to Ms. Simon's damage.

## COUNT III
### Retaliation
### ADA, 42 U.S.C. § 12203(a)
### (Against the District)

55. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

56. Ms. Simon engaged in protected activity under the ADA by requesting reasonable accommodation and by opposing the District's failure to accommodate her, including through her union appeals.

57. The District subjected Ms. Simon to materially adverse actions, including reassignment to an unsuitable placement, assignment of lower-classified duties, and a downgrade of her title.

58. A causal connection exists between Ms. Simon's protected activity and the adverse actions, established by the close temporal proximity between her accommodation requests and appeals and the District's actions, and by the District's shifting explanations.

59. As a direct and proximate result, Ms. Simon has suffered the damages described above.

## COUNT IV
### Race Discrimination
### Title VII, 42 U.S.C. § 2000e-2(a)
### (Against the District)

60. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

61. Ms. Simon is Black/African American and a member of a protected class.

62. She was qualified for and satisfactorily performing her position, as reflected in her "Distinguished" evaluation.

63. The District subjected Ms. Simon to adverse employment actions, including reassignment to a lower-classified role and a downgrade of her title and duties.

64. Similarly situated employees outside Ms. Simon's protected class were treated more favorably under circumstances giving rise to an inference of racial discrimination, including the preservation of their assignment preferences and the placement of a non-Black employee into a position that was not posted.

65. Race was a motivating factor in the District's actions. As a direct and proximate result, Ms. Simon has suffered the damages described above.

**COUNT V**
**Retaliation**
**Title VII, 42 U.S.C. § 2000e-3(a)**
**(Against the District)**

66. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

67. Ms. Simon engaged in protected activity by opposing practices she reasonably believed to be racially discriminatory, including through complaints to District officials and union appeals.

68. The District took materially adverse actions against her, as described above, that would dissuade a reasonable employee from engaging in protected activity.

69. A causal connection exists between the protected activity and the adverse actions. As a direct and proximate result, Ms. Simon has suffered the damages described above.

**COUNT VI**
**Disability and Race Discrimination and Retaliation**
**Ohio Rev. Code § 4112.02**
**(Against the District)**

70. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

71. The conduct alleged above independently violates the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02, which prohibits discrimination on the basis of disability and race and prohibits retaliation, and which is generally construed in accordance with its federal analogues.

72. The District failed to accommodate Ms. Simon's disability, engaged in disability- and race-based discrimination, and retaliated against her for protected activity, in violation of Ohio Rev. Code § 4112.02 and § 4112.99.

73. As a direct and proximate result, Ms. Simon has suffered the damages described above, for which Ohio Rev. Code § 4112.99 provides a civil remedy.

**COUNT VII**
**Deprivation of Procedural Due Process**
**42 U.S.C. § 1983**
**(Against the District and Defendants Hardis, Veon, and Jackson, in their individual capacities)**

74. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

75. At all relevant times, the individual Defendants acted under color of the statutes, ordinances, regulations, customs, and usages of the State of Ohio and the District.

76. Ms. Simon possessed a constitutionally protected property interest in her continued employment, arising under Ohio Rev. Code § 3319.081 and the operative collective bargaining agreement, under which she could be removed only for cause and after due process.

77. Defendants deprived Ms. Simon of that property interest by effecting her removal and permanent replacement without first providing her constitutionally adequate notice of the grounds and a meaningful opportunity to be heard, as required by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

78. The process afforded Ms. Simon before the deprivation was constitutionally inadequate, and adequate post-deprivation remedies did not cure the violation.

79. The deprivation was effected through the official action of the District's Board of Education and by District officials, including the Superintendent, possessing final policymaking authority over the District's employment decisions. The deprivation therefore represents the

official policy of the District, rendering the District liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

80. As a direct and proximate result of Defendants' conduct, Ms. Simon suffered damages, including lost wages and benefits and emotional distress. The individual Defendants acted willfully and in reckless disregard of Ms. Simon's clearly established rights, entitling Ms. Simon to punitive damages against the individual Defendants. Ms. Simon does not seek punitive damages against the District.

**COUNT VIII**
**First Amendment Retaliation**
**42 U.S.C. § 1983**
**(Against the District and Defendants Hardis, Veon, and Jackson, in their individual capacities)**

81. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

82. At all relevant times, the individual Defendants acted under color of state law.

83. Ms. Simon engaged in expression protected by the First Amendment: off-duty speech made as a private citizen and not pursuant to her official duties. Upon information and belief, the speech addressed a matter of public concern and did not identify the District, any District employee, or any District matter.

84. Ms. Simon's interest in engaging in that protected expression outweighed any legitimate interest of the District in the efficient operation of its workplace, particularly because the speech did not disrupt District operations and was unrelated to her employment. See *Pickering v. Board of Education*, 391 U.S. 563 (1968); Connick v. Myers, 461 U.S. 138 (1983).

85. Defendants took adverse action against Ms. Simon, subjecting her to disciplinary action while she was on protected medical leave, because of her protected expression.

86. Ms. Simon's protected expression was a substantial or motivating factor in the adverse action, and Defendants would not have taken the same action absent that expression.

87. The adverse action was taken through the official action of, or pursuant to policy established by, District officials possessing final policymaking authority, rendering the District liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

88. As a direct and proximate result, Ms. Simon suffered damages. The individual Defendants acted willfully and in reckless disregard of Ms. Simon's clearly established rights, entitling Ms. Simon to punitive damages against the individual Defendants. Ms. Simon does not seek punitive damages against the District.

### COUNT IX
**Constructive Discharge (Pled in the Alternative)**
**(Against the District)**

89. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

90. Through the discriminatory and retaliatory conduct alleged above, including the denial of a reasonable accommodation that aggravated Ms. Simon's disability, the demotion of her duties and title, the retaliation for her protected activity, and the discipline imposed during her medical leave, the District created working conditions so difficult and intolerable that a reasonable person in Ms. Simon's position would feel compelled to resign or cease working.

91. The District created and maintained these conditions with the intent of, or with reckless disregard for, forcing Ms. Simon out of her employment.

92. To the extent Ms. Simon is deemed to have separated from her employment with the District, that separation was not voluntary but was a constructive discharge caused by the District's unlawful conduct. This count is pled in the alternative, to the extent the finder of fact determines that a completed separation has occurred.

93. As a direct and proximate result of the constructive discharge, Ms. Simon suffered damages, including lost wages and benefits, in addition to the other damages alleged herein.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sherita Simon respectfully requests that this Court enter judgment in her favor and against Defendants and award the following relief:

a.  A declaration that Defendants' conduct violated the ADA, Title VII, and Ohio Rev. Code Chapter 4112;

b.  Injunctive and equitable relief, including provision of the reasonable accommodation of a private, enclosed workspace, restoration of Ms. Simon's title and duties, and reinstatement as appropriate;

c.  Back pay, front pay, and lost benefits;

d.  Compensatory damages for emotional distress and other non-economic harm, in an amount to be determined at trial and in excess of $75,000;

e.  Punitive damages against the individual Defendants on the Section 1983 counts (Counts VII and VIII), as permitted by law;

f.  Reasonable attorneys' fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, 42 U.S.C. § 1988, and Ohio Rev. Code § 4112.99;

g.  Pre- and post-judgment interest; and

h.  Such other and further relief as the Court deems just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Karrie D. Howard, Esq.
**HOWARD LEGAL SERVICES LLC**
1414 South Green Road, Suite 203 PMB 16
South Euclid, Ohio 44121
(330) 774-9198
khoward@howardlegalservices.com

*Attorney for Plaintiff Sherita Simon*